USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ____________
DATE FILED: 09/04/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
DR. JOSEPH MERCOLA, DO,

Plaintiff,

- against-

25-cv-4355 (LAK-JW)

VIJI VARGHESE, et al.,

Defendants,
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OPINION**
**GRANTING MOTIONS TO DISMISS**

Appearances:

Joshua A. Siegel
KASOWITZ LLP

*Attorney for Plaintiff*

Stephen Nakamura
MERLE, BROWN & NAKAMURA, P.C.

*Attorney for Defendants Michael Pearson and BCube Tech, LLC*

LEWIS A. KAPLAN, *District Judge.*

This matter is before the Court on plaintiff's objections to Magistrate Judge Willis's July 22, 2026, Report and Recommendation suggesting the partial dismissal of the first amended complaint.

***Facts***[1]

Plaintiff Joseph Mercola alleges that he was defrauded out of approximately $10 million worth of Ethereum ("ETH"), a cryptocurrency.[2] He asserts that Defendant John Edward Gliha a/k/a John J. Singleton ("Singleton"), an acquaintance, introduced him to Defendant Viji Varghese in April 2024 and vouched for Varghese's credentials as an experienced financial professional and cryptocurrency expert.[3] Varghese then allegedly offered to manage Mercola's Ethereum in exchange for 4 percent of any profits.[4] Varghese proposed also to convert some of the cryptocurrency into gold as a way to safeguard Mercola's wealth.[5]

According to the amended complaint, virtually everything Varghese told Mercola about this supposed investment opportunity turned out to be false. After Mercola transferred 3,353.4 ETH – valued at roughly $10 million at the time – to Varghese on April 17, 2024, and June 7, 2024, Varghese allegedly absconded with it.[6] Although Varghese apparently did convert some of it to gold, the gold was held in Varghese's name and placed under Varghese's sole control.[7] Mercola

[1] The following facts are drawn from the amended complaint and accepted as true for the purposes of the motion to dismiss.

[2] Am. Compl. (Dkt 20) ¶ 1.

[3] *Id.* ¶¶ 43-52.

[4] *Id.* ¶¶ 53-58.

[5] *Id.* ¶ 59-62.

[6] *Id.* ¶¶ 64, 116-20.

[7] *Id.* ¶¶ 66-73.

quickly suspected something was wrong. In October 2024 he demanded the return of his assets.[8] Varghese and Singleton spent weeks obfuscating and, eventually, stopped responding altogether.[9]

Mercola allegedly transferred his Ethereum to Varghese by placing it into an electronic "wallet" that directly or indirectly was controlled by Varghese.[10] Mercola subsequently hired a forensic investigator who purportedly determined through "blockchain tracing" that Mercola's Ethereum had been "dissipated through multiple wallets and laundered through cryptocurrency exchanges including, OKX, FalconX, Bybit, FortressTrust.com, and Kraken."[11]

Further investigation into Fortress Trust, one of the cryptocurrency exchanges through which Mercola's Ethereum was routed, allegedly revealed that Varghese jointly controlled – with Defendant Michael Pearson – a Fortress Trust wallet for Defendant BCube Tech, LLC ("BCube"), and that Pearson controlled a second Fortress Trust wallet for Defendant Amparo North, LLC.[12] The amended complaint alleges that BCube is jointly owned by Pearson and Varghese and that Amparo North is "affiliated with or controlled by Defendants Pearson and Varghese."[13] According to the amended complaint, "0.002 ETH and 0.001 ETH were sent [on May 10, 2024] from the (Fortress Trust) wallet identified as belonging to Defendant Pearson, which are [said to be]

---

8 *Id.* ¶ 78.

9 *Id.* ¶¶ 79-120.

10 *Id.* ¶ 64.

11 *Id.* ¶ 123.

12 *Id.* ¶ 129.

13 *Id.* ¶¶ 29, 32.

linked to the corporate entities, Defendants BCube Tech and Amparo North."[14] Based on the forgoing, the amended complaint alleges upon information and belief that "Defendant Varghese and Pearson used the Fortress Trust account to route Plaintiff's crypto assets, demonstrating their joint participation and active coordination in the dissipation of Plaintiff's assets."[15]

Mercola brought this action against Varghese in May 2025.[16] Shortly thereafter, this Court authorized expedited discovery into the cryptocurrency wallets through which Mercola's Ethereum allegedly had been routed.[17] That discovery apparently uncovered the information concerning Fortress Trust recounted above. Mercola then filed an amended complaint that named as additional defendants Singleton and Pearson, as well as several entities alleged to be owned by or associated with Varghese and/or Pearson: BCube, Amparo North, Royal Amparo, DMCC, and Alpha Yield Capital, LCC.[18]

To date, Pearson and BCube are the only defendants to have appeared in this action. The Clerk has issued certificates of default against Varghese, Singleton, Amparo North, Royal

---

[14] *Id.* ¶ 129.

[15] *Id.* ¶ 131.

[16] Dkt 5.

[17] Dkt 10.

[18] The amended complaint also names 10 "John Does" who are alleged to be additional co-conspirators with Varghese. Am. Compl. ¶¶ 40-41.

Amparo, and Alpha Yield Capital.[19] Pearson and BCube filed motions to dismiss,[20] and Magistrate Judge Willis recommended that their motions be granted in a Report and Recommendation (the "R&R") issued on July 22, 2026.[21] Mercola filed timely objections,[22] to which Pearson and BCube responded.[23]

## *Discussion*

The R&R recommends that the Court dismiss all claims against Pearson and BCube and dismiss the unjust enrichment and RICO claims against all defendants. The Court adopts these recommendations for the following reasons.

### *I. Personal Jurisdiction*

Plaintiff argues that this Court has personal jurisdiction over Pearson and BCube on the ground that those defendants "transact[ed] . . . business within" New York and that this case "arise[s] from" that transaction.[24] The amended complaint, however, does not allege any such transactions. Rather, in opposing defendants' motion to dismiss, plaintiff offered evidence that "on

19 Dkts 139, 140, 162, 163, 210.

20 Dkts 52, 53.

21 Dkt 228.

22 Dkt 229.

23 Dkt 230.

24 N.Y. C.P.L.R. § 302(a)(1).

April 19, 2024, Pearson and BCube, at the request of Skybound Ventures LLC (a New York-registered entity controlled by Defendant Viji Varghese) converted 193.023 BTC and 4,161.4 ETH into USDT, then transferred it back to Skybound's wallet."[25]

The amended complaint makes no mention of an entity called Skybound Ventures LLC. Furthermore, although plaintiff submitted records showing the "specific blockchain transaction identifiers" involved in the Skybound transaction,[26] plaintiff has not alleged in a pleading or otherwise facts sufficient to show that his Ethereum has been, or likely could be, traced to the Skybound wallet said to be involved. That is so despite the fact that plaintiff elsewhere alleges that his forensic investigator was able to trace his Ethereum to "multiple wallets."[27] The Court therefore agrees that, on the current record, plaintiff has failed to make out a *prima facie* case of personal jurisdiction over either Pearson or BCube because he has not sufficiently alleged facts sufficient to make out a nexus between the Skybound transaction and this case.

## *II. Failure to State a Claim*

The amended complaint brings claims against all defendants, including Pearson and BCube, for commodities fraud, securities fraud, and civil RICO under federal law, and for fraud, fraudulent inducement, conversion, and unjust enrichment under New York law.

---

25 Dkt 71 ¶ 5.

26 *Id.* ¶ 6.

27 Am. Compl. ¶ 123.

*A. Fraud Claims*

The commodities and securities fraud, common law fraud, and fraudulent inducement claims all have as an element the making of false or misleading statements or material omissions. The R&R recommends the dismissal of these counts against Pearson and BCube on the ground that neither of those defendants is alleged to have made any false or misleading statements or omissions to the plaintiff. In fact, neither is alleged to have interacted with the plaintiff at all. Mercola objects that the amended complaint sufficiently alleges Pearson's and BCube's "knowing and direct participation in the alleged crypto-laundering scheme that defrauded Plaintiff of approximately $10 million."[28]

The Court adopts the R&R's reasoning on this point, but with one additional observation. It is clear from plaintiff's papers that his theory of the case is not (or simply cannot on the facts currently alleged be) that Pearson and BCube personally committed each element of each tort, but rather that they were "co-conspirators" with Varghese, or otherwise knowingly participated in the alleged scheme to defraud plaintiff.[29] A defendant generally may not be held civilly liable under Section 10(b) of the Securities Exchange Act on conspiracy or aiding and abetting theories.[30] But the Commodities Exchange Act permits private suits against aiders and abettors,[31] and New York courts appear to recognize conspiracy and aiding and abetting liability for common law

---

28 Dkt 229 at 3.

29 *E.g.*, Am. Compl. ¶ 4.

30 *Dinsmore v. Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin*, 135 F.3d 837, 838 (2d Cir. 1998).

31 7 U.S.C. § 25(a)(1).

fraud.[32] At the same time, "a plaintiff cannot merely 'blandly assert a conspiracy,'"[33] and plaintiff thus far has made no attempt to argue that the elements of conspiracy or aiding and abetting liability have been pleaded adequately against Pearson or BCube. Thus, on the current record, the amended complaint must be dismissed.

### *B. Conversion*

The R&R recommends dismissal of the conversion claim against Pearson and BCube on the ground that the pleading fails to provide enough specificity as to any misconduct of those two defendants. "A complaint may not simply 'lump all the defendants together in each claim and provide no factual basis to distinguish their conduct.'"[34] The allegations in support of the conversion count repeatedly refer to the "Defendants" without distinguishing among them, except to name Varghese (and only Varghese) in one paragraph.[35] The Court therefore agrees that the conversion claim is not sufficiently pleaded against Pearson or BCube.

---

32 *See, e.g.*, *Maersk, Inc. v. Neewra, Inc.*, 687 F. Supp. 2d 300, 322 (S.D.N.Y. 2009) ("Where . . . a plaintiff has demonstrated a conspiracy to defraud, a misrepresentation made in furtherance of the conspiracy may be imputed to each of the co-conspirators."); *Martin Hilti Family Tr. v. Knoedler Gallery, LLC*, 386 F. Supp. 3d 319, 349 (S.D.N.Y. 2019).

33 *Andre Emmerich Gallery, Inc. v. Segre*, No. 96-cv-889, 1997 WL 672009, at *4 (S.D.N.Y. Oct. 29, 1997) (cleaned up) (quoting *Lehigh Valley Indus., Inc. v. Birenbaum*, 527 F.2d 87, 93-94 (2d Cir.1975)).

34 *Soter Techs., LLC v. IP Video Corp.*, 523 F. Supp. 3d 389, 411 (S.D.N.Y. 2021) (cleaned up) (quoting *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001)).

35 Am. Compl. ¶¶ 206-12.

### *C. Unjust Enrichment*

The R&R recommends dismissal of the unjust enrichment claim as duplicative of plaintiff's other claims. Under New York law, "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a convention contract or tort claim."[36] "Two claims are duplicative of one another if they 'arise from the same facts . . . and do not allege distinct damages.'"[37] Plaintiff's unjust enrichment claim arises from the same fraud purportedly alleged in the other counts and does not appear to allege distinct damages. If plaintiff were to prevail on his tort claims, the unjust enrichment claim would be duplicative. If those other claims were to fail, "an unjust enrichment claim [could not] remedy the defects."[38] The Court therefore agrees that, as pled, the unjust enrichment count fails to state a claim.[39]

A court may *sua sponte* dismiss a claim against a defendant who has not moved for such relief so long as the plaintiff is given notice and opportunity to be heard.[40] Plaintiff was given

---

36 *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012).

37 *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) (quoting *Sitar v. Sitar*, 854 N.Y.S.2d 536, 538 (App. Div. 2008)).

38 *Corsello*, 18 N.Y.3d at 791.

39 *Cf. La Rosa v. SPD Swiss Precision Diagnostics GmbH*, No. 24-1575, 2025 WL 841687, at *4 (2d Cir. Mar. 18, 2025) (dismissing unjust enrichment claim after finding that defendant's allegedly deceptive advertising was "not deceptive as a matter of law" and the complaint failed to explain why any enrichment would be unjust if the advertising were not deceptive).

40 *Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam).

the requisite notice and opportunity here,[41] and the defect in the unjust enrichment claim identified above is applicable to all defendants. Accordingly, the claim will be dismissed as to all defendants.

### *D. Civil RICO*

To state a claim under the Racketeering Influenced and Corrupt Organizations (RICO) Act, a plaintiff must allege facts making out "(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962."[42]

The amended complaint purports to bring claims under each of the four subsections of Section 1962. None of these claims, however, is viable as currently pleaded as to any defendant.

#### *1. Section 1962(a)*

Under Section 1962(a), a person may not "use or invest" any income derived from "a pattern of racketeering activity" "in acquisition of any interest in, or the establishment or operation of, any enterprise."[43] Under this subsection, a plaintiff "must show injury caused not by the pattern of racketeering activity itself, but rather by the use or investment of the proceeds of that activity."[44]

---

41 Dkt 218.

42 *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001) (quoting *Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.*, 101 F.3d 900, 904 (2d Cir. 1996)).

43 18 U.S.C. § 1962(a).

44 *Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310, 321 (2d Cir. 2011).

Even assuming (without deciding) that the amended complaint adequately pleads the existence of income derived from "a pattern of racketeering activity," which, as explained below, it does not, Plaintiff's attempt to assert a Section 1962(a) claim fails. The amended complaint does not allege that income derived from racketeering activity – even his Ethereum or proceeds of its sale – was invested into, or used to establish or operate, any enterprise. It necessarily follows that the amended complaint fails also to allege an injury resulting from the investment of such income into an enterprise, as distinct from an injury resulting from commission of the alleged racketeering predicates.

2. *Section 1962(b)*

Under Section 1962(b), a person may not "acquire or maintain . . . any interest in or control of any enterprise" "*through* a pattern of racketeering activity."[45] Under this subsection, a plaintiff must "allege distinct damages arising from the acquisition or maintenance of control of the enterprise" – that is, damages that are "different from the damages that flow from the predicate acts themselves."[46]

Assuming (again without deciding) that plaintiff adequately has pleaded a pattern of racketeering activity, the amended complaint still fails to state a claim for violation of Section 1962(b). Nowhere does the amended complaint allege that defendants used the commission of racketeering acts to gain or maintain control over an enterprise. The only "RICO Enterprise" alleged to exist is the "association-in-fact" of the defendants BCube Tech, Amparo North, Royal Amparo,

---

45 18 U.S.C. § 1962(b) (emphasis added).

46 *D'Addario v. D'Addario*, 901 F.3d 80, 98 (2d Cir. 2018).

and Alpha Yield Capital.[47] According to the amended complaint, these entities already were under Varghese's or Pearson's control prior to the commission of the predicate acts of racketeering.[48] It is no surprise, then, that the amended complaint fails also to allege "distinct damages" flowing from the acquisition or maintenance of control over an enterprise.[49]

### *3. Section 1962(c)*

Under Section 1962(c), a person may not "conduct or participate . . . in the conduct of [an] enterprise's affairs through a pattern of racketeering activity."[50] The amended complaint fails to state a Section 1962(c) claim at least because it fails adequately to allege the commission of "a pattern of racketeering activity."

"[R]acketeering activity" is defined to include the violation of various federal laws, including, as relevant here, the commission of wire fraud and interstate transportation of stolen property.[51] To prove that a defendant engaged in "a pattern of racketeering activity," however, a plaintiff must do more than show that a defendant engaged in multiple acts of racketeering. The

47 Am. Compl. ¶ 246.

48 *Id.* ¶¶ 29, 32, 36, 38.

49 *D'Addario*, 901 F.3d at 98.

50 18 U.S.C. § 1962(c).

51 *Id.* § 1961(1).

plaintiff must show also that the alleged acts of racketeering either amounted to, or pose or posed a threat of, "*continuing* racketeering activity."[52]

The requisite "continuity" may be shown through alleging "either an 'open-ended' pattern of racketeering activity (*i.e.*, past criminal conduct coupled with a threat of future criminal conduct) or a 'closed-ended' pattern of racketeering activity (*i.e.*, past criminal conduct 'extending over a substantial period of time')."[53]

Closed-ended continuity requires criminal conduct "extending over a substantial period of time."[54] "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement."[55] Courts in this district generally have held "that where the conduct at issue involves a limited number of perpetrators and victims and a limited goal, the conduct is lacking in closed-ended continuity," even "when the scheme's duration exceeds one year."[56] Here, the amended complaint alleges racketeering activity "involving a single scheme of narrow scope, including one victim and a limited number of related participants."[57] Furthermore,

---

52 *United States v. Alucino*, 44 F.3d 1102, 1110 (2d Cir. 1995) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989)).

53 *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 97 (2d Cir. 1997) (quoting *GICC Cap. Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 466 (2d Cir. 1995)).

54 *H.J. Inc.*, 492 U.S. at 242.

55 *Id.*

56 *FD Prop. Holding, Inc. v. U.S. Traffic Corp.*, 206 F. Supp. 2d 362, 372 (E.D.N.Y.2002) (collecting cases).

57 *Stein v. N.Y. Stair Cushion Co.*, No. 04-cv-4741, 2006 WL 319300, at *8 (E.D.N.Y. Feb. 10, 2006) (footnote omitted).

the alleged scheme was carried out over the course of mere months.[58] Absent a threat of future criminal conduct, the short-lived scheme alleged in the complaint "does not constitute the sort of 'long-term criminal conduct' that Congress sought to target in RICO."[59]

Open-ended continuity requires "a threat of future criminal conduct."[60] The amended complaint alleges that the purpose of the alleged RICO enterprise was to defraud him of his cryptocurrency and hide and disseminate the illegally gotten assets.[61] That conduct allegedly has already occurred. Thus, on plaintiff's own telling, there is no threat of future criminal conduct, as the sole purpose of the alleged RICO enterprise has been realized. The only allegation hinting at the possibility of ongoing or at least additional criminal conduct is the amended complaint's assertion that *Varghese* "has committed similar racketeering activities involving wire fraud to defraud additional victims."[62] That allegation, however, refers only to past conduct and expressly pertains only to Varghese, not the alleged RICO enterprise.

---

58 Am. Compl. ¶¶ 43, 78, 116 (plaintiff introduced to Varghese in April 2024; Mercola demanded assets back in October 2024; Varghese stopped responding to plaintiff in December 2024).

59 *Stein*, 2006 WL 319300, at *8 (*GICC*, 67 F.3d at 469).

60 *Schlaifer Nance & Co.*, 119 F.3d at 97 (quoting *GICC*, 67 F.3d at 466).

61 Am. Compl. ¶¶ 246-47, 256.

62 *Id.* ¶ 258.

*4. Section 1962(d)*

Under Subsection 1962(d), a person may not conspire to violate any of the forgoing provisions.[63] The amended complaint asserts in wholly conclusory fashion that defendants "conspired to violate" RICO.[64] This "drive-by" allegation does not plausibly suggest the existence of a conspiracy. Even if it did, the amended complaint would fail to state a claim under Section 1962(d). The pattern of racketeering activity that defendants allegedly conspired to commit does not, in fact, constitute a pattern of racketeering activity within the meaning of the RICO statute. Nor is there any suggestion whatsoever that defendants either invested income derived from racketeering activity into an enterprise or used racketeering activity to acquire or maintain control over an enterprise. There likewise is no basis upon which to conclude that defendants conspired to do those things.

*III. Jurisdictional Discovery*

In his objections, plaintiff devotes three sentences to requesting expedited discovery into Pearson's and BCube's contacts with Varghese and the State of New York.

The amended complaint does not allege facts sufficient to state a cause of action against Person or BCube. Unless plaintiff can amend to state a legally sufficient claim against at least one of them, the question of jurisdictional discovery is academic. Accordingly, the request for jurisdictional discovery as to these defendants is denied without prejudice to renewal in the event

---

[63] *Id.* § 1962(d).

[64] Am. Compl. ¶ 246.

any new amended complaint is held by this Court to state a legally sufficient claim against at least one of them.

## Conclusion

For the foregoing reasons, the motions to dismiss the amended complaint by defendants Person and BCube Tech, LLC (Dkts 52, 53) are **GRANTED** and the first amended complaint is **DISMISSED** as to each of them both for want of personal jurisdiction and failure to state a claim upon which relief may be granted. The unjust enrichment and civil RICO claims are **DISMISSED** as to all defendants for failure to state a claim upon which relief may be granted. Any motion for leave to amend shall be filed within thirty days of the date hereof and shall be accompanied by the proposed second amended complaint and, in addition, a red-lined copy of the proposed second amended complaint marked to show changes from the first amended complaint.

SO ORDERED.

Dated: September 4, 2026

Lewis A. Kaplan
United States District Judge